**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

MARYBETH LUKIE,

    Plaintiff,

v.                                              Case No: 8:20-cv-943-TPB-AAS

METLIFE GROUP, INC.,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant's motion for summary judgment filed on June 11, 2021. (Doc. 31). Plaintiff filed a response in opposition on July 1, 2021. (Doc. 32).[1] Defendant filed a reply on July 16, 2021. (Doc. 34). Based on the motion, response, reply, court file, and record, the Court finds as follows:

**Background**

Plaintiff Marybeth Lukie began working for Defendant Metlife Group, Inc., in December 2007. She was promoted to Vice President and moved to Defendant's Enterprise Risk group in 2012. Plaintiff's primary areas of responsibility included operational risk, regulatory risk, third party asset management risk, and governance risk. In 2016, Plaintiff moved from Defendant's New Jersey offices to Tampa, and from April 2016 until her resignation in May 2017, she reported to Senior Vice President Graham Cox. Plaintiff consistently received good

---

[1] The Court denies Plaintiff's motion to strike Defendant's summary judgment motion on the ground that it exceeds the permitted page limits.

performance evaluations, a substantial annual base salary ($251,000 in 2016) with raises each year, and bonuses.

Plaintiff complains however, that she was subjected to harassment by coworkers between 2007 and 2011, prior to her promotion and transfer to the Enterprise Risk group, and that Defendant paid her less than other male Vice Presidents in her group.  Beginning in 2015, her supervisors increasingly assigned her tasks that she viewed as outside her primary job duties and "administrative" or "feminized" in nature.  Plaintiff alleges that she complained about these issues to her supervisors and others in management, and that in April 2017, Cox retaliated against her by transferring responsibilities relating to third party asset management from Plaintiff to another employee.  Plaintiff resigned on May 9, 2017.[2]  At the time of her resignation Plaintiff was being paid approximately $259,000 per year.

On March 5, 2018, Plaintiff dual-filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").  On March 18, 2020, she filed this suit in state court under the Florida Civil Rights Act ("FCRA"), alleging disparate treatment (Count I), hostile work environment (Count II), and retaliation (Count III).  Defendant removed the case to federal court and has moved for summary judgment on all counts.

---

[2] Plaintiff had on several previous occasions tendered her resignation, but in each instance she had been persuaded to remain.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

The FCRA prohibits an employer from discriminating against employees with respect to compensation, terms, conditions, or privileges of employment on account of their race, color, religion, sex, or other protected characteristics. § 760.10(1)(a), *F.S.* Prohibited discrimination includes both taking tangible adverse employment actions (such as termination) against employees and requiring employees to work in

a hostile work environment. *See, e.g., Nurse "BE" v. Columbia Palms W. Hosp. Ltd. P'ship,* 490 F.3d 1302, 1308 (11th Cir. 2007); *Maldonado v. Publix Supermarkets*, 939 So. 2d 290, 293 (Fla. 4th DCA 2006) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244 (11th Cir. 1999)).[3] The FRCA also prohibits retaliation against employees for opposing unlawful discriminatory practices. § 760.10(7), *F.S.* Plaintiff asserts that Defendant violated each of these prohibitions.

### *Disparate Treatment (Count I)*

Plaintiff alleges Defendant engaged in two types of discriminatory tangible employment actions: paying her less than similarly situated men and assigning her "administrative" tasks that were not assigned to men. Where, as here, "direct evidence of unlawful discrimination is lacking . . . plaintiffs may instead turn to the burden-shifting framework" set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). *Flowers v. Troup Cty., Ga. Sch. Dist.*, 803 F.3d 1327, 1335 (11th Cir. 2015); *see also Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1018-19 (11th Cir. 1994) (noting that the *McDonnell Douglas* burden shifting framework applies to claims of gender-based wage discrimination under Title VII).

Under the *McDonnell Douglas* framework, the plaintiff must make out a prima facie case for intentional discrimination by showing: (1) she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) she was

---

[3] Claims under the FCRA are analyzed under the same framework as claims under Title VII, and courts apply cases construing Title VII to FCRA claims. *See, e.g., Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

qualified to perform the job or receive a higher wage; and (4) her employer treated "similarly situated" employees outside her class more favorably. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc); *Cooper v. So. Co.*, 390 F.3d 695, 735 (11th Cir. 2004). Establishing a prima facie case creates an initial presumption of discrimination. *Flowers*, 803 F.3d at 1336. The burden then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d at 1221 (citing *Burdine*, 450 U.S. at 253). "Once the employer advances its legitimate, nondiscriminatory reason, the plaintiff's prima facie case is rebutted and all presumptions drop from the case." *Flowers*, 803 F.3d at 1336 (citing *Burdine*, 450 U.S. at 255). The burden then shifts back to the plaintiff to demonstrate that the defendant's reason was a pretext for discrimination. *Lewis*, 918 F.3d at 1221.

<u>Unequal Pay</u>

Plaintiff alleges that Defendant discriminated against her by paying her less than her male peers. Defendant does not dispute that Plaintiff is in a protected class or that she was qualified. Unequal pay, if proven, would constitute an adverse employment action. *See, e.g., Heatherly v. Univ. of Ala. Bd. of Trustees*, 778 F. App'x 690, 693 (11th Cir. 2019). Defendant argues, however, that Plaintiff cannot meet the remaining element of her prima facie case, which requires evidence that she was paid less than similarly situated men. *See Cooper*, 390 F.3d at 745. To constitute proper comparators, persons outside a plaintiff's protected class must be similarly situated to the plaintiff "in all material respects." *Lewis*, 918 F.3d at

1224.  Whether this standard is met "will not turn on formal labels, but rather on substantive likenesses." *Id*. at 1228.  "[T]he plaintiff must show that, in her job, she 'shared the same type of tasks' as the comparators.'" *Cooper*, 390 F.3d at 735 (quoting *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992)).  This standard does not require that the comparators be the plaintiff's identical twins, but it does require that they "be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" *Lewis*, 918 F.3d at 1228 (quoting *Young v. United States Parcel Service*, 575 U.S. 206, 135 S. Ct. 1338, 1355 (2015)).

Plaintiff offers evidence that her base salary from 2015 to 2017 was less than that of three individuals: Rob Semke, Howie Kurpit, and Scott Orr.[4]  She asserts that these individuals were also Vice Presidents, also reported to a Senior Vice President who headed the Enterprise Risk group, and managed the same number of subordinates.  She also asserts they had the same overall, day-to-day responsibilities, but offers no specifics to support this conclusion.

While Plaintiff was a CPA and held an MBA, she admitted in her deposition that both Kurpit and Orr (who also held an MBA), unlike Plaintiff, were actuaries and that Defendant paid actuaries more highly than non-actuaries.  This distinction eliminates Kurpit and Orr as proper comparators.  Plaintiff also admitted that she

---

[4] Plaintiff points to another employee, John Dingler, but offers no salary information for him.  Moreover, she admitted in her deposition that Dingler headed up a different team, worked in investments, rather than risk management, and was involved in oversight, which she was not.  Accordingly, Plaintiff has presented no evidence that Dingler was "similarly situated in all material respects" but was paid more than Plaintiff.

and Semke had different areas of expertise, managed different risk streams, and had "different jobs," and she further admitted she did not know what Semke did on a day-to-day basis. In view of these specific admissions, Plaintiff's conclusory assertion that Semke's job responsibilities and hers were the same is not probative. *See McKenny v. United States*, 973 F.3d 1291, 1303 (11th Cir. 2020) ("[W]e have held that conclusory affidavits lack probative value.") (citing *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986-87 (11th Cir. 1985)); *Gray v. City of Jacksonville, Fla.*, 492 F. App'x 1, 5 (11th Cir. 2012) (holding that the district court could properly disregard the assertions in the plaintiff's affidavit that she took over purported comparator's duties because she admitted she had no knowledge of what those duties were).

Because Plaintiff has failed to present evidence that she and her proposed comparators were "similarly situated in all material respects," she has failed to make out a prima facie case under the *McDonnell Douglas* framework. *See, e.g., Cooper*, 390 F.3d at 745 (holding that the plaintiff had failed to establish a prima facie case where she failed to show with any particularity that she and her proposed comparators had similar job responsibilities). Plaintiff has also failed to adduce other facts presenting a "convincing mosaic of circumstantial evidence" of intentional discrimination as an alternative to the *McDonnell Douglas* prima facie case. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotation omitted); *see also Lewis*, 918 F.3d at 1220 n.6. Accordingly,

Defendant is entitled to summary judgment on Plaintiff's FCRA claim based on allegations of unequal pay.

### "Administrative" Assignments

Plaintiff asserts that beginning in 2015 her assigned job responsibilities increasingly included "administrative" tasks, such as attending meetings, taking notes, and preparing reports and other documents. She felt that this work was not her responsibility, that others in her group (who were men) were not asked to do it, and that having to do it was unfair and interfered with her ability to fully focus on her primary duties. Defendant argues that assigning these tasks did not constitute an adverse employment action as required to support a discrimination claim.

An adverse employment action is an "indispensable" element of a discrimination claim and requires either an ultimate employment decision, such as firing, or other conduct that constitutes a serious and material change in the terms, conditions or privileges of employment. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238-39,1246 (11th Cir. 2001); *see also Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Dunn v. City of Tallahassee*, 4:01-cv-228-WS, 2002 WL 1979128, at *6 (N.D. Fla. July 5, 2002). Conduct that does not constitute an ultimate employment decision must meet a threshold level of substantiality, going beyond the "ordinary tribulations of the workplace." *Davis*, 245 F.3d at 1239 (internal quotation omitted). The employee's subjective view of the employer's action is not controlling; the action must be materially adverse as viewed by a reasonable person under the circumstances. *Id*. at 1239-40.

The Eleventh Circuit has further cautioned that the adverse action requirement must be carefully applied where the plaintiff's claim is based on disagreement with the employer's work assignments. Such claims "strike at the very heart of an employer's business judgment and expertise" and "challenge an employer's ability to allocate its assets in response to shifting and competing market priorities." *Id.* at 1244. It is therefore unusual for a change in work assignments, without any tangible harm, to be "so substantial and material that it does indeed alter the 'terms, conditions or privileges of employment.'" *Id.*; *see also Gupta*, 212 F.3d at 587-88 (holding that a teacher who was required to teach more and less desirable classes than other teachers failed to provide evidence of a sufficiently "serious and tangible" action to raise an issue of fact)

Plaintiff complains she was assigned "administrative" tasks, which she also refers to as "secretarial," or "stereotypically female." Some of her complaints, however, relate to tasks such as drafting documents relating to a company-wide "risk appetite statement" that went far beyond anything reasonably characterized as "secretarial," even if the tasks also involved working with, as Plaintiff put it, "colors and fonts." Plaintiff fails to explain how these tasks and others assigned to her constitute adverse employment actions under the standards set forth above. She consistently received good evaluations, raises, and bonuses, and she points to no evidence that these assignments impacted her economically. *See Davis*, 245 F. 3d at 1245 ("'In the vast majority of instances . . . we think an employee alleging a loss of prestige on account of change in work assignments, without any tangible

harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause . . . ."); *Dunn*, 2002 WL 1979128, at *7 ("Dunn does not say that these assignments affected his compensation or other terms and privileges of employment or that they adversely affected his status as an employee . . . .").

Except in an unusual case, it is the employer who determines what is needed from its employees and how to allocate responsibilities, free from second-guessing by the courts. *Davis*, 245 F.3d at 1244. It is not unusual for an employer to require employees to attend meetings, create documents, to make copies or perform other pedestrian tasks when necessary, and to work long hours. These are "ordinary workplace tribulations," not adverse employment actions. *See, e.g., MacLean v. City of St Petersburg*, 194 F. Supp. 2d 1290, 1299 (M.D. Fla. 2002) ("Increased workloads are an 'ordinary tribulation of the workplace' for which employees should expect to take responsibility."). Accordingly, Defendant is entitled to summary judgment on Count I of the complaint.

### *Harassment (Count II)*

Plaintiff alleges that she was the victim of a hostile work environment because several coworkers made offensive, sexist comments to her or in her presence, such as asking her "is that a banana in my pants or am I just happy to see you" and referring to Plaintiff as a "cougar." Defendant argues that Plaintiff's hostile work environment claim is time-barred.

An employer unlawfully discriminates against an individual in violation of the FCRA when it allows harassment sufficiently severe or pervasive to constitute a

material change in the terms and conditions of the individual's employment. *Ng v. Brennan*, 8:17-cv-509-T-36AEP, 2019 WL 2436581, at *4 (M.D. Fla. June 11, 2019). As a prerequisite to filing suit under the FCRA, the employee is required to exhaust administrative remedies by timely filing an administrative charge with the EEOC or the FCHR within 365 days of the alleged unlawful acts. § 760.11(1), *F.S*; *Pedrioli v. Barry Univ., Inc.*, 6:17-cv-577-Orl-40GJK, 2018 WL 538743, at *2 (M.D. Fla. Jan. 24, 2018). Failure to timely file an administrative charge bars the claim for discrimination. *Smith v. Shriner's Hosp. for Children*, 8:06-cv-1532-T23-EAJ, 2007 WL 433351, at *1 (M.D. Fla. Feb. 6, 2007). Hostile work environment claims are cumulative in nature, and an administrative charge is therefore timely if at least one of the alleged acts of harassment took place within one year before the plaintiff filed the charge. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-17 (2002).

Plaintiff filed her administrative charge on March 5, 2018, but the only acts of harassment she points to are offensive comments made between 2007 and 2011, many years before her administrative filing.[5] Plaintiff's hostile work environment

---

[5] Plaintiff's bare assertion that unspecified "hostility" and "harassment" continued into 2017 lacks probative value. A hostile work environment requires an environment "permeated" with acts of "intimidation, ridicule, and insult" related to the plaintiff's protected status sufficiently severe or pervasive to alter the terms and conditions of the plaintiff's employment. *Tonkyro v. Sec'y, Dep't of Veterans Affairs,* 995 F.3d 828, 836-37 (11th Cir. 2021). Plaintiff points to no evidence of any such harassment after 2011. Indeed, while this issue was not fully briefed, even the alleged conduct that took place from 2007 to 2011, while offensive, appears insufficient to meet this standard.

claim is therefore time-barred, and Defendant's motion for summary judgment is granted as to that claim in Count II, which is dismissed with prejudice.[6]

### *Retaliation (Count III)*

Plaintiff claims she engaged in protected activity under the FCRA when she complained at various times to her supervisors and others about harassment, disparate pay, and "administrative" work assignments. She asserts that her supervisor, Graham Cox, retaliated against her for these complaints by transferring her duties relating to third party asset management (or "MIM") risk to another employee, Scott Orr, in April 2017.

Retaliation claims under the FCRA are reviewed under the burden-shifting framework discussed above. *See Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020); *Ceus v. City of Tampa*, 803 F. App'x 235, 244 (11th Cir. 2020). Plaintiff may establish a prima facie case for retaliation by evidence that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the two events. *Johnson*, 948 F.3d at 1325; *Scott v. Sarasota Doctors Hosp., Inc.,* 145 F. Supp. 3d 1114, 1127 (M.D. Fla. 2015).

Defendant argues that Plaintiff's evidence fails to meet any of the required elements. The Court will assume for purposes of this Order that Plaintiff's

---

[6] Where a plaintiff has failed to exhaust administrative remedies, the appropriate result is dismissal rather than summary judgment. *Bryant v. Rich*, 530 F.3d 1368, 1374-76 (11th Cir. 2008); *Fleming v. The Fla. Bar*, 994 F. Supp. 2d 1255, 1260 (N.D. Fla. 2014). Where, as here, the required administrative remedies have become unavailable due to the passage time, dismissal with prejudice is appropriate. *See Bryant*, 530 F.3d at 1375 n.11; *Fleming*, 994 F. Supp. 2d at 1263.

complaints constituted protected activity and that the transfer of the MIM risk function to Orr constituted a materially adverse action.  To avoid summary judgment, Plaintiff must also present direct or circumstantial evidence of a causal connection between her complaints and Cox's transfer of the MIM work.  Plaintiff offers no direct evidence on this point.  Temporal proximity between protected conduct and an adverse action generally constitutes circumstantial evidence of causation.  *Brungart v. Bellsouth Tecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).  However, the temporal proximity must be "very close."  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007); *see, e.g.*, *Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226, 229-30 (11th Cir. 2011) (holding that a two-month gap is not "very close").  Despite close temporal proximity, other circumstances may negate the inference of causation.  *Hill v. SunTrust Bank*, No. 6:15-cv-890-Orl-28DCI, 2017 WL 253850, at *9 (M.D. Fla. Jan. 19, 2017).

Plaintiff asserts that she complained about the issues noted above from the outset of her employment, and specifically complained in 2015 and 2016 about the assignment of "administrative" tasks.  But she points to no complaint that closely preceded Cox's transfer of the MIM work in April 2017.  The only evidence of a complaint in 2017 comes from Cox, who testified in deposition that Plaintiff complained to him about the "administrative" tasks *after* he transferred the MIM work to Orr.  Since her complaint occurred after the transfer, it cannot have caused the transfer.  *See, e.g., Manley v. Dekalb Cty., Ga.*, 587 F. App'x 507, 512 (11th Cir. 2014); *Giakoumakis v. Maronda Homes, Inc. of Fla.*, No. 5:08-cv-487-Oc-10GRJ,

2010 WL 11507432, at *11 (M.D. Fla. Mar. 26, 2010).  Accordingly, Plaintiff has failed to establish a prima facie case.[7]

Where a plaintiff has established a prima facie case, the burden shifts to the defendant to offer a non-retaliatory reason for its action.  *See Johnson*, 948 F.3d at 1325.  The defendant's burden to provide a legitimate reason for its actions is "a low bar to hurdle."  *Flowers*, 803 F.3d at 1336.  The defendant "'need not persuade the court that its proffered reasons are legitimate' as its burden is 'merely one of production, not proof.'"  *Burgos-Stefanelli v. Sec'y, United States Dep't of Homeland Sec.*, 410 F. App'x 243, 247 (11th Cir. 2011) (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc)).

If the defendant meets that burden, then the plaintiff must present sufficient evidence to "'allow a reasonable finder of fact to conclude that the [employer's] articulated reasons were not believable.'"  *Callahan v. City of Jacksonville, Fla.*, 805 F. App'x 749, 753 (11th Cir. 2020) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)).  The plaintiff must "demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'"  *Rioux v. City of Atlanta, Ga.*, 520 F.3d

---

[7] Plaintiff also asserts that Defendant retaliated against her by assigning more "administrative" tasks.  However, she points to no specific facts demonstrating a close temporal proximity between any specific events and admits that these types of assignments preceded as well as followed her complaints, which negates any inference of causation.  Plaintiff also alleges that Defendant retaliated against her by creating a "hostile work environment," but similarly fails to point to evidence of a temporal sequence that suggests causation.  In addition, any claim based on a hostile work environment is time-barred for the reasons discussed above.

1269, 1275 (11th Cir. 2008) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).  The Court is not a "'super-personnel department that reexamines an entity's business decisions.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)).  Accordingly, a plaintiff cannot succeed by quarreling with the wisdom of the employer's decision or by showing the decision was based on erroneous facts. *Burgos-Stefanelli*, 410 F. App'x at 247; *Thatcher v. Dep't of Veterans Affairs*, No. 8:17-cv-3061-T-AEP, 2020 WL 2838849, at *16 (M.D. Fla. June 1, 2020).  A proffered reason is not a pretext for retaliation unless the reason was false, and retaliation was the real reason. *Gogel*, 967 F.3d at 1136.  The burden remains on the plaintiff to show that, but for her protected activity, the adverse action would not have occurred. *Id.* at 1135-36 & n.13; *Palm Beach Cty. Sch. Bd. v. Wright*, 217 So. 3d 163, 164-65 (Fla. 4th DCA 2017) (en banc).

Cox testified in deposition that he made the decision to transfer the MIM risk function to Orr because, among other things, he believed that personnel working in that area in Defendant's New Jersey office would benefit from on-site leadership by Orr (Plaintiff having moved to Tampa in 2016), and he believed the MIM work would benefit from Orr's quantitative background.  These constitute legitimate, non-retaliatory reasons for Cox's decision.  Plaintiff's response points to no evidence showing that these reasons were pretextual under the standards set forth above. Her assertion that Orr had "zero necessary experience" amounts to quarreling with the wisdom of Cox's decision, rather than evidence that his stated reasons were

false and the real reason was retaliation. *See Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009) (holding that pretext must be shown by specific facts rather than conclusory assertions).

Finally, Plaintiff asserts as part of her retaliation claim that she was "constructively discharged." Constructive discharge occurs where an employer deliberately makes working conditions so unbearable that a reasonable employee in the plaintiff's position would be compelled to resign. This requires an "even greater severity or pervasiveness of harassment than is required for a hostile work environment claim." *Zarza v. Tallahassee Hous. Auth.*, 686 F. App'x 747, 753 (11th Cir. 2017). Plaintiff's evidence does not rise to this level.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant's motion for summary judgment (Doc. 31) is **GRANTED**.

(2) The Clerk is directed to enter judgment in favor of Defendant MetLife Group, Inc., and against Plaintiff Marybeth Lukie on Count I and Count III of the complaint, and to enter judgment dismissing Count II of the complaint with prejudice.

(3) Following the entry of judgment, the Clerk is directed to terminate any

pending motions and deadlines and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 24th day of February, 2022.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**